### Brighton Manuf'g Co. *v.* Reading Fire Ins. Co.

*(Circuit Court, N. D. Illinois.* July 25, 1887.)

1. **Insurance—Conditions—Increase of Risk.**

    A policy of insurance contained a clause that if the risk was increased with the knowledge of insured, and without notice to the company, the policy should be void. A manufacturing company stopped work for a few days, cotton being high, and repaired its machinery meantime, whereby no use could be made of a steam-pump and hose, connected with the engine, in case of fire. The policy permitted stoppage for repairs. *Held,* that there was no increase of risk by this temporary stoppage.

2. **Same—Conditions—Vacant and Unoccupied Premises.**

    A policy of insurance provided that if the building insured became vacant and unoccupied, without the knowledge and consent of the company, the policy should be void. Defendant, a manufacturing company, temporarily stopped work, and repaired its machinery, the night and day watchmen were on duty, and the employes were at and about the factory from its closing until it burned. *Held,* that the building was in no sense vacant and unoccupied.

At Law. Suit to recover on a fire insurance policy.

The Brighton Manufacturing Company, plaintiff, sued the Reading Fire Insurance Company for loss by fire.

*E. W. Russell,* for plaintiff.

*Gary, Cody & Gary* and *Fred'k Ullman,* for defendant.

Blodgett, J. This is a suit upon a policy issued by the defendant company, insuring the cotton manufactory and the machines therein owned by the plaintiff, situate in the south-western portion of the city of Chicago, for the sum of $1,500, from the twenty-third day of February, 1885, to the twenty-third day of February, 1886. The factory and machinery covered by the policy were destroyed by fire on the sixteenth day of July, 1885, and the loss was substantially total. The facts in the case as they appear from the proof are briefly these: The plaintiff was the owner of the factory and machinery in question, and in possession and operating the same, up to the first of May, 1885, when the same was leased to W. S. Baker and Thomas Kelley, for the term of one year from that date. Kelley and Baker entered into possession, and the leasing of the factory to them was duly assented to by the defendant. Baker and Kelley operated the factory up to the eighth of July, when they stopped manufacturing, and discharged the most of the employes. The engineer, firemen, and the employes operating the spinning and batting machinery, were discharged. A portion of the employes connected with the dyeing-house, and some employes connected with the packing-room, were

retained for the purpose of fitting for market the manufactured goods. The cause of suspending the manufactory seems to have been twofold. The grade of cotton required for the manufacture of the goods in which the factory was chiefly employed was hard to obtain just at that time at such prices as would enable them to manufacture at a profit, and the machinery needed repairing and overhauling for the ensuing year's work. The employes were notified that their services would be dispensed with for the time being, but that the factory would soon start up, and that they would have notice when they were wanted again. Arrangements were made to make the necessary repairs to the machinery and buildings; and the work of preparing for market the manufactured goods went on under a sufficient corps of employes, so that the most of the goods were ready for market on July 16th. By a stipulation between the parties, the amount which the plaintiff would be entitled to recover upon the policy has been agreed upon and adjusted between them, sub-ject to any defense which the defendant may have against their liability upon the policy under the facts in the case. The policy contains this clause:

"If, during the existence of this policy, or any renewal thereof, the risk shall be increased by any means whatever with the knowledge of the insured, and he shall neglect to notify the company thereof, and have the same in-dorsed hereon, paying therefor such additional premium as shall be demanded, * * * or allow the building herein insured to become vacant and unoc-cupied without notice to and consent of the company, then, and in every such case, this policy shall be null and void."

The policy also contains this clause in the written portion thereof:

"Other insurance permitted without notice, and permission granted to set up and operate machinery, and make such repairs and alterations as may be necessary to keep the premises in good order during the term of this policy without prejudice thereto."

The defenses set up are: (1) That the risk was increased with the knowledge of the assured, of which no notice was given to the defend-ant, and no indorsement thereon made on the policy; (2) that plaintiff allowed the premises to become vacant and unoccupied, without notice to and consent of the defendant.

The only fact upon which the defense of increase of risk is based is the stoppage of the manufactory, whereby, as it is claimed, the engine not being in operation, no use could be made of the steam-pump and hose which were in the factory for the purpose of extinguishing fires; while it is claimed by defendant that, if the engine had been in opera-tion, it is possible that the fire might have been extinguished. The tes-timony as to whether the stopping of the manufactory increased the risk is conflicting. Undoubtedly it is a question of fact to be determined by the court in place of a jury whether the stoppage of the factory increased the risk or not. I do not think that, in the light of the proof in this case, the mere stoppage of the machinery can be held to have increased the risk; but, even if it did, there was no covenant or undertaking on the part of the assured that these devices for the purpose of extinguish-

ing fire should be kept or maintained in the factory, and the assured undoubtedly had the right to remove them if it saw fit. In other words, there was no obligation on the part of the assured to keep this force-pump and hose in the factory for the purpose of protecting the property against fire. That the machinery was to stand still part of the time was undoubtedly in the contemplation of the parties at the time of the issue of this policy. The policy specially permits the stoppage for repairs and alterations; and it was always stopped over night and Sundays, when it would be in all respects as much exposed to fire as it was during the eight days that intervened between the time the machinery was stopped and the time of the fire. I am, therefore, clearly of opinion that there was no increase of risk by stopping manufacturing by the lessees, as the stoppage was only temporary, and for a purpose permitted by the policy. The mere fact that the then price of cotton furnished another motive for stopping at that time does not defeat this right to stop and still retain the policy in force.

As to the second defense, that the premises were allowed to become vacant and unoccupied, I do not think that in any sense this clause can be said to have been violated by the plaintiff. The premises were in charge of the usual superintendent of the company; the night and day watchmen were on duty all the time the machinery lay still; employes were at the factory and about it all the time from the eighth day of July, when the work was suspended, until the building was burned; and in no sense does it seem to me that the premises can be said to have been vacant and unoccupied. It is true they were not as densely occupied by employes in the working hours of these eight days as they were during those hours when the factory was running; but still there were enough people about to retain possession, and keep watch against intrusion, and to give notice, if a fire should break out or other danger arise to the property involving the risks under the policy.

I am, therefore, of opinion that the defense is not sustained by the proof; and the issue is found for the plaintiff, with damages according to the adjustment, and interest from the time the loss became payable.